# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
October 1, 2012 Session

# LURA M. McBRIDE v. FARRAGUT BOARD OF ZONING APPEALS, ET AL.

**Appeal from the Chancery Court for Knox County**
**No. 180717-2      Daryl R. Fansler, Chancellor**

---

**No. E2012-000388-COA-R3-CV-FILED-NOVEMBER 29, 2012**

---

This is an appeal from a judgment in a certiorari review action where the trial court ruled in favor of the petitioner. The trial court found that a proposed construction project involving the petitioner's property was not covered by the local zoning ordinance, and, therefore, the petitioner was not required to seek a variance from the local board of zoning appeals in order to obtain a building permit. The respondents appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

John T. Batson, Jr., and E. Courtney Epps, Knoxville, Tennessee, for the appellants, Farragut Board of Zoning Appeals and Mark Shipley, Assistant Community Development Director.

Richard L. Hollow, Knoxville, Tennessee, for the appellee, Lura M. McBride.

## OPINION

## I. BACKGROUND

Lura M. McBride is the owner of a residence situated in Fox Den Village ("the Village") in the Town of Farragut ("the Town") in Knox County, Tennessee. McBride shares a common property line with the Village's golf course.

McBride's residence was constructed in 1971 with a raised concrete deck on the rear of the home. This deck consists of brick walls and a concrete foundation part of and

contiguous with the foundation of the residence, over which a concrete cap was constructed and surfaced with tile.  Because of the height of the deck,  a decorative wrought iron railing enclosed it.

In January of 1980, the Town was incorporated.  The Village was included within the Town's corporate limits.   At the time of its incorporation, the Town enacted a zoning ordinance and related regulations.  A setback requirement was designated for the instant property, requiring a front setback of 35 feet from any adjoining road or property line and a rear setback of 25 feet from an adjoining road or property line.  McBride acquired her property after the adoption of the zoning ordinance.

In 2011, McBride sought to erect columns and a roof over the existing deck.  She submitted an application for the desired improvement to the Architectural Review Board ("the ARB") of the Village in March 2011, and received the unanimous approval that same month.  However, the ARB commented that the approval was predicated upon the Town issuing a building permit.  To document the basis for the ARB's approval, its Chair documented the following:

> We consider this an improvement that will add value to your property and the Fox Den Village community.  Approval was given with the knowledge that the corner of your existing deck encroached slightly into the 25' rear easement recorded on your plat survey and required by the Town of Farragut.  This minor encroachment occurred 40 years ago, and is not an issue with the ARB. If it were a slab on grade patio, we would not have approved the construction of a roof system over the portion within the encroached easement.  ***However, since the deck is masonry construction built on a masonry foundation continuous with the house foundation, and more than two feet above grade, we considered this as part of the existing house foot print (i.e., permanent structure).***  We would allow desirable modifications above the foundation within this footprint.   The distinction between a slab on grade patio encroachment and a deck encroachment that is part of the house foundation and footprint was material in our decision.  This distinction is not discernable from just looking at a plan view on the plat survey.  This should be pointed out to the Town of Farragut.  I suggest that you include photos of the existing structure, as you did in the application to the ARB.  Our approval of your project included the comment that Farragut must also be in agreement and issue a building permit.  This comment was not made because the ARB has reservations relative to your project, but rather out of respect for the prerogative of the Town of Farragut.

Please share the ARB rationale with the Town of Farragut[.] I hope that my letter will be helpful in your Building Permit application. . . .

(Emphasis added.). Shortly after McBride submitted her application for a building permit from the Town in April 2011, the Respondent, Mark Shipley, in his capacity as Assistant Community Development Director, reviewed and denied it.

Shipley concluded that the raised concrete deck was addressed in Chapter 4, Section IV, A., of the Town's zoning ordinance, pertaining to patios, decks, and other non-roofed and non-enclosed "appurtenances" that could be placed to within ten feet of a rear and side property line. He did not consider the deck to be a part of the principal building. He observed that the deck in its current state is, at its closest point to the rear property line, roughly 18 feet and 7 inches from the rear property line. Because Shipley considered the deck to be an appurtenance, in his view, covering it would convert it into a building, subject to the applicable setback requirement for a building. Thus, per Shipley, the building created by the proposed roof over the deck would encroach roughly 6 feet and 5 inches into the setback.

Specifically, the staff recommendations to deny the variance indicated the following reasons:

a) This request is driven purely by the applicant's preference. There is nothing inherent in the property itself that would reflect state law parameters for granting a variance . . . ;

b) The denial of this variance does not affect the reasonable use of the property. The property has been used as a dwelling unit for 40 years and, as noted above, currently complies with all setback requirements;

c) It is very possible that in order to comply with current building code requirements the existing deck would have to be removed anyway because it was not constructed specifically to support a roof (the re-constructed addition could then be arranged to meet all setback requirements);

d) Even if the existing deck could meet the applicable building code requirements for adding a roof a sizable portion of the deck could be covered and still comply with the Town's setback requirements. There is a reasonable alternative available that would comply with all Town requirements and provide the applicant with a covered deck. Again,

this particular request is driven purely by the applicant's preference; and

e)   To grant a variance for a noncompliant expansion to a compliant building (which would in essence be the same as building a new house that encroaches into a required setback) would establish a very unfortunate precedent and reflect an inequitable application of the setback requirements that others must adhere to. Frankly, if a variance were granted here there would be virtually no request that could come before the board in the future that could be denied based on the precedent established in the granting of a variance in this case.

After the denial by Shipley, McBride sought a review by the Respondent, the Town of Farragut Board of Zoning Appeals ("the BZA") (along with Shipley, collectively "the Respondents"). Her request provided as follows:

REQUEST VARIANCE OF 77 INCHES:

Please accept this letter as an appeal to the denial of a building permit to cover an existing deck, which was built forty years ago (in 1971). . . . This home was built long before the Town of Farragut was incorporated on January 16, 1980. According to Mark Shipley, the permit was denied because it did not meet the Town of Farragut setback requirement of 25 feet. Mr. Shipley also stated the reason for the denial was because he did not want to set a "precedent."

At the time of the denial, Mr. Shipley was aware that this request was being made to put a roof over a forty-year-old concrete deck.

According to the attached 2007 survey map, one corner of the existing deck is 18 feet, 7 inches from the rear property line, adjoining the golf course. There is a 30 foot golf course easement documented in the Fox Den Subdivision Covenants. The Fox Den Homeowners Association has unanimously approved her request to cover the existing deck. In fact, the members of the Fox Den Homeowners Association related to Mrs. McBride that they believe covering the deck will enhance the overall beauty of her home, which is in keeping with the objectives and goals of the Homeowners Association and the community as a whole.

Lura McBride is 90-years-old and enjoys spending time outside when she is

-4-

able. However, in the recent years, she has developed a problem with skin cancer, which has required surgery on three different occasions. Because of this medical condition, we are requesting a variance of 77 inches in the rear setback of her property to put a roof over her existing deck, giving her protection from the afternoon sun.

We are requesting an expedited meeting of the Town of Farragut Board of Zoning Appeals because Mrs. McBride currently has a contractor available to complete this project, pending the approval of the permit from the Town of Farragut Zoning Appeals Board.

In summary, Mrs. McBride desires to cover her existing rear deck so that she may enjoy its use while she lives out the remainder of her life. This request is reasonable and the granting of this variance would not cause any detriment to the public good; nor would it violate or impair the intent and purpose of the Farragut Zoning Ordinance. Pursuant to Article I., paragraph C. *Where, by reason of exceptional narrowness, shallowness or shape of a specific piece of property at the time of the enactment of the zoning regulation, or by reason of exceptional topographic conditions or other extraordinary and exceptional situation or condition of such piece of property, the strict application of any regulations enacted under this part and part 3 of this chapter would result in peculiar and exceptional practical difficulties to or exception or undue hardship upon the owner of such property, to authorize, upon an appeal relating to the property, a variance from such strict application so as to relieve such difficulties or hardship; provided, such relief may be granted without substantially impairing the intent and purpose of the zoning plan and zoning ordinance. (T.C.A. 13-7-207) . . . .*

Nowhere in the request was it stated that a variance was necessary "by virtue of the shape and configuration" of the lot.

The BZA is a board established pursuant to Tennessee Code Annotated sections 13-7-205 through 13-7-207. As established under these statutes, any board of zoning appeals may hear appeals concerning administrative decisions of a municipality. Tenn. Code Ann. § 13-7-206. A board of zoning appeals may also decide requests for variances. Tenn. Code Ann. § 13-7-207. Tennessee Code Annotated section 13-7-207(3), which is essentially adopted by the Farragut Zoning Ordinance in Article 1, paragraph C, provides:

Where by reason of exceptional narrowness, shallowness, or shape of a specific piece of property at the time of the enactment of the zoning regulation,

or by reason of exceptional topographic conditions or other extraordinary and exceptional situation or condition of such piece of property, the strict application of the zoning ordinance would result in peculiar and exceptional practical difficulties to or exception or undue hardship upon the owner of such property, authorize, upon an appeal relating to the property, a variance from such strict application so as to relieve such difficulties or hardship; provided that such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and zoning ordinance.

A public hearing was held before the BZA on April 27, 2011. Shipley echoed the recommendations he had previously submitted. The minutes of the BZA meeting provide as follows:

> **Item 2. Public hearing on a request for a rear yard setback variance associated with a proposed addition to the dwelling unit at 12369 North Fox Den Drive (Lura M. McBride, Applicant)**
>
> Town attorney, Tom Hale, provided an overview of the parameters related to variances and the Town staff member Mark Shipley reviewed the specifics of the request before the board. The staff noted that the proposed enclosure of the existing uncovered deck would involve a variance of roughly 6 feet and 5 inches. The staff indicated that the variance could not be supported for a number of reasons. Those reasons included the following:
>
> > a) There was nothing inherent in the property itself that would reflect state law parameters for granting a variance and the request basically involved the preferences of the applicant;
> >
> > b) The denial of the variance would not affect the reasonable use of the property. The property has been used as a dwelling unit for 40 years and currently complies with all setback requirements;
> >
> > c) A sizable portion of the deck (over 300 square feet) could be covered and still comply with the Town's setback requirements. This meant that there was a reasonable alternative available that would comply with all Town requirements and provide the applicant with a covered deck; and

d) To grant a variance for a noncompliant expansion to a compliant building (which would in essence be the same as building a new house that encroaches into a required setback) would establish a very unfortunate precedent and reflect an inequitable application of the setback requirements that others must adhere to.

[McBride's daughter-in-law], Ruby McBride, spoke on behalf of their request to cover the existing deck. Ms. McBride noted that, since the deck footprint was already there, this had been approved by the Fox Den Homeowner's Association. Ms. McBride elaborated on the reasons for the proposed enclosure of the deck and explained that to modify the enclosure to meet setbacks would not be as visually appealing and would likely not be approved by the Homeowner's Association.

Board members discussed this matter in depth with Board member Scotes abstaining due to his involvement on the Fox Den Homeowner's Association Board.

Board member LaMarche noted that, given the degree of variance requested and the fact that a reasonable option that would comply with setback requirements exists and a bad precedent could be established, he could not support the variance request. Other board members echoed Mr. LaMarche's concerns.

A motion was made by LaMarche and seconded by Porter to deny the requested variance for the reasons outlined by Town staff. Motion passed 3-0-1 (with Scotes abstaining).

McBride thereafter filed a petition for writ of certiorari, seeking judicial review of the BZA's action. Trial in this matter was held on January 4, 2012, at which time the following discussion occurred:

JUDGE FANSLER: What's an appurtenance under this code?

MR. BATSON: I'm not sure it's an issue in this case, but –

JUDGE FANSLER: Well, it is, it says, "Patios, decks and other similar non-roofed and non-enclosed appurtenances of a principal building shall not be required to meet the side and rear setback requirements of the principal

-7-

building."

MR. BATSON:  Perhaps a built-in grill.  I – I really don't know what – other than the definition, what it would  – what it would entail, your Honor.

The facts in this case, though, is the deck – the deck would be allowed.  It –

JUDGE FANSLER:  Now, just hang with me, I've got some questions.

* * *

. . .  What if instead of being a  – a deck that they want to put a roof on, it was actually the rear wall of the house was 7 feet, 77 inches?

MR. BATSON:  It would be a building and it would be subject to the 25-foot setback as opposed to the 10.

JUDGE FANSLER:  Well, that's there before the zoning –

MR. BATSON:  That's a different issue altogether because it's a pre-existing nonconforming use.

JUDGE FANSLER:  Well, the reason I ask this is because the architectural board at Fox Den made a really astute observation that this is not a slab that is poured on to the back of the house, this is part of the foundation of the house all tied together.

MR. BATSON:  And – and – and it – it could be allowed to stay there, your Honor.  We're not asking that the deck – that that slab be removed, it's just the part that you're going to cover that – that then puts the –

JUDGE FANSLER:  Well, I mean, y'all are saying you put on a roof on it it becomes a building.

MR. BATSON:  That's right.  Under – under the  – under their definitions of building versus patio or deck.

I mean, it's  – it's the definitions of the ordinance itself that – that makes the distinction.

JUDGE FANSLER: Well, now, here's – here's what I'm asking: They make a – they don't say patios, decks and other similar non-roofed and non-enclosed structures, they say "Appurtenances of a principal building."

Now, how does something that's in the whole same foundation poured together and built together become an appurtenance of the principal building?

MR. BATSON: How does it become an appurtenance?

JUDGE FANSLER: Right. I mean, there's a difference between an appurtenance and a principal building. And this says that – you know, the architectural board and I know it's – I'm just commenting because it's the observation they made. They say, now, if this had been a slab, we wouldn't have approved it. And it's only because it's part of the same foundation.

MR. BATSON: I don't know that the Architectural Review Board distinctions between the two, No. 1, are – are binding on –

JUDGE FANSLER: I'm not suggesting they are. I'm just saying that when I read that I'm wondering what the difference is.

Then I go over and read on Exhibit C here what it says, "A patio, deck or other similar non-roofed and non-enclosed appurtenance."

So they're labeling a – a patio or a deck that's not subject to the 10 foot as non-enclosed appurtenance of a principal building.

Now, if this is not an appurtenance of the principal building, but, in fact, part of the principal building, then it's a non-conforming use that's existed prior to the enactment of the zoning ordinance; correct?

MR. BATSON: I – I – I think it's an appurtenance. It's not – it's – it's – it's not covered, it's not got columns – it's not covered –

JUDGE FANSLER: It's got the foundation tied together according to the record.

* * *

JUDGE FANSLER: Well, here, I've got another question.

-9-

Under Building it says, "A structure having a roof supported by columns and walls and intended for the shelter, housing or enclosure of any individuals."

* * *

. . . Now, I'm – I'm – do you agree that what they were asking for was not an enclosed room back there? It wasn't like they were putting a sun[room] on, they wanted a – what these pictures show, the columns and a – and a roof –

* * *

MR. BATSON: I – I don't think there's any – any dispute that what they were asking for required columns and a roof.

What else they were going to do with it now or in the future if the variance [was] granted is – is not clear to me, but what is clear, what is not in dispute is – is what really the Board acted upon which made it qualify for a building under the city zoning ordinance and that is columns and a roof.

* * *

JUDGE FANSLER: . . . We agreed that what they asked for is non-enclosed; is that correct?

* * *

. . . Well, it says, "Patios, decks and other similar non-roofed and non-enclosed appurtenances of a principal building shall not be required to meet the side and rear setback requirements."

* * *

. . . Well, you know, Mr. Batson, the town is going to have to pick one or the other here. They can't live with both of these definitions. Because you want to call it a building because you've got building defined as something with a roof on it and a structure, okay?

But then you come over here with your – with your definition of porches –

* * *

-10-

Now, y'all want to say that this thing becomes a building because you put a roof up on it, and . . . it doesn't meet the other part of it. It's not for housing and it's not for an enclosure of any individual, and so forth. So it's only a building because it's got a roof . . . .

MR. BATSON: And because it meets the definition of a building in their –

JUDGE FANSLER: Well, what is the definition of a building?

MR. BATSON: "Building, any structure having a roof supported by columns or walls."

JUDGE FANSLER: Well, is it the structure or is it an appurtenance to a structure?

\* \* \*

MR. BATSON: . . . What – what the Board was looking at is as it exists now without columns and without a roof, it meets the patio, deck and other similar non-roofed and non-enclosed appurtenances.

JUDGE FANSLER: All right. Well, here's – here's my problem with what your board's reasoning is on this.

Their reasoning is that if you put a roof on an appurtenance it becomes a structure in itself. Because this house already has a roof. It's already a structure. It's been a structure for 41 years.

\* \* \*

. . . But it is a structure with a roof on it. Always has been.

\* \* \*

. . . "A patio, deck or other similar non-roofed and non-enclosed appurtenances." It doesn't say or other similar non-roofed or non-enclosed appurtenances. [T]hat's why I've been asking is there any – any issue about whether or not it's going to be enclosed? Because "A patio, deck or other similar non-roofed and non-enclosed appurtenances" is not subject to a setback.

-11-

* * *

. . . It's not – it's not a separate building and that's – that's what the issue that the – architectural board was making.

If they poured a slab out in the backyard and put a roof on it, it's a separate structure, Mr. Batson, but under your definition, this is an appurtenance of a principal building it's not going to be enclosed.

I'm – I'm not going to get to the issue on these other things. I don't think this – this is what – what is proposed here is even subject to the variance. It's not even subject to the setback.

It's under a 10-foot setback under this definition of patios and decks and other similar non-roofed and non-enclosed appurtenances of a principal building.

Now, if they enclosed it, it becomes part of the principal building. It they build a separate structure out there with a – with a roof over it and – and intending it for shelter then it's –

* * *

And I've looked at this case originally and I thought from the building permit that they wanted to add a room back there like a sunroom or something, enclosing it and I said okay.

But as it developed here today and I hear that there's no enclosure of this and that it is, in fact, part of the original foundation and they simply want to put a roof over what is out there and not enclosed –

I've – I've pored over this definition and pored over it, "Patios, decks and other similar non-roofed and non-enclosed appurtenances." They could have said patios, decks and other similar non-enclosed appurtenances, non-roofed or non-enclosed appurtenances, but they've got both of them. "And," conjunctive, non-roofed and non-enclosed appurtenances.

So, I mean, I don't – I don't know what – what I do except – I mean, I'm not substituting my judgment for anything. *I just don't think that what's proposed here falls under the legal definition that the town has used for patios, decks and other similar non-roofed and non-enclosed appurtenances*

-12-

***of a principal building.***

(Emphasis added.).  Therefore, the trial court determined that putting a roof over part of the original foundation (i.e., raised, tiled concrete deck) was not addressed in the ordinance, and that the Respondents were not legally entitled to require McBride to seek a variance.  This timely appeal followed.


## II.  ISSUE

The issue presented for review is whether the trial court erred in construing the Town's zoning ordinance in a manner such that McBride was not required to request a variance from the BZA because her proposed addition would not be subject to a 25-foot setback requirement.


## III.  STANDARD OF REVIEW

This action is brought pursuant to Tennessee Code Annotated section 27-8-101, et seq., which governs the extraordinary remedy of common law writ of certiorari, and section 27-9-101 et seq., which provides procedures for review by writ of certiorari of decisions by boards and commissions.

An action by a board of zoning appeals is an administrative or quasi-judicial act rather than a legislative act. *McCallen v. City of Memphis,* 786 S.W.2d 633, 638–639 (Tenn. 1990). The proper method of judicial review of an action of a board of zoning is through the common law writ of certiorari.  Tenn. Code Ann. § 27-9-101 et seq.; *McCallen*, 786 S.W.2d at 639.  In *State ex rel. Moore & Assocs., Inc. v. West*, 246 S.W.3d 569 (Tenn. Ct. App. 2005), we explained that "the primary consequence of a determination that a party must seek judicial review through the common law writ of certiorari procedure is that the trial court must apply a limited standard of review to decisions already made by administrative officials, rather than address the issue *de novo* as the initial decision maker."  *Moore*, 246 S.W.3d at 574.  The *Moore* court explained this limited standard of review as follows:

> Under the limited standard of review in common law of writ of certiorari proceedings, courts review a lower tribunal's decision only to determine whether that decision maker exceeded its jurisdiction, followed an unlawful procedure, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision.  *Petition of Gant*, 937 S.W.2d 842, 844-45 (Tenn. 1996), *quoting McCallen v. City of Memphis*, 786 S.W.2d 633, 638

-13-

(Tenn. 1990); *Fallin v. Knox County Bd. of Com'rs*, 656 S.W.2d 338, 342-43 (Tenn. 1983); *Hoover Motor Exp. Co. v. Railroad & Pub. Util. Comm'n*, 195 Tenn. 593, 604, 261 S.W.2d 233, 238 (1953); *Lafferty v. City of Winchester*, 46 S.W.3d 752, 758-59 (Tenn. Ct. App. 2001); *Hoover, Inc. v. Metropolitan Bd. of Zoning Appeals*, 955 S.W.2d 52, 54 (Tenn. Ct. App. 1997); *Hemontolor v. Wilson Co. Bd. of Zoning Appeals*, 883 S.W.2d 613, 616 (Tenn. Ct. App. 1994).

*Moore*, 246 S.W.3d at 574.

The interpretation of an ordinance is a question of law to be reviewed de novo. Zoning ordinances must be construed and applied "with some deference toward a property owner's right to the free use of his or her property." *Lions Head Homeowners' Ass'n v. Metro. Bd. of Zoning Appeals*, 968 S.W.2d 296, 301 (Tenn. Ct. App. 1997). Courts will seek to interpret a zoning ordinance in a way that is "most consistent with the ordinance's general purposes," but any ambiguity will be resolved "in favor of the property owner's right to the unrestricted use of his or her property." *421 Corp. v. Metro. Gov't of Nashville & Davidson Cnty.*, 36 S.W.3d 469, 475 (Tenn. Ct. App. 2000). It has been held that because zoning ordinances are an attempt to limit the use of land by a property owner, they are in derogation of the common law, and, therefore, are to be strictly construed in favor of the property owner. *See Anderson Cnty. v. Remote Landfill Servs., Inc.*, 833 S.W.2d 903, 909 (Tenn. Ct. App. 1991).

## IV. DISCUSSION

This case concerns the interpretation of certain provisions of the Town's zoning ordinance. The provision regarding setbacks provides as follows:

Patios, decks, and other similar non-roofed and non-enclosed appurtenances of a principal building shall not be required to meet the side and rear setback requirements of the principal building. Such appurtenances shall be setback a minimum of ten (10) feet from the side and rear property lines[.]

A building is defined as:

Any structure having a roof supported by columns or walls and intended for the shelter, housing, or enclosure of any individual, animal, process, equipment, goods, or materials of any kind.

The Respondents contend (1) that the trial court exceeded its authority by substituting

-14-

its own judgment for that of the Respondents in interpreting the Town's zoning ordinance, and (2) the court should have deferred to the Respondents' interpretation of the zoning ordinance. They claim the trial court employed a very forced and strained interpretation of the applicable zoning ordinance in order to provide McBride a remedy to which she was not entitled. The Respondents note that McBride never advanced the argument that the proposed construction did not require a variance.

Contrary to the position of the BZA, the trial court determined that McBride's raised, concrete deck constructed on the same foundation as the principal building is part of the principal building – not a patio, deck, or similar appurtenance as identified in the ordinance (observing it did not find that "what's proposed here falls under the legal definition that the town has used for patios, decks and other similar non-roofed and non-enclosed appurtenances of a principal building."). As such, the encroachment by the deck component of the principal building into the rear setback is a non-conforming use that existed prior to the enactment of the zoning ordinance at issue. We find no error in the Chancellor's determination.

## V. CONCLUSION

We affirm the decision of the trial court and remand. We assess the costs of this appeal to the Farragut Board of Zoning Appeals and Mark Shipley.

_____
JOHN W. McCLARTY, JUDGE